1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  CARLOS GARCIA,                    Case No.  1:20-cv-00924-CDB

12              Plaintiff,            ORDER GRANTING PLAINTIFF'S MOTION
                                      FOR SUMMARY JUDGMENT AND
13      v.                            REVERSING THE COMMISSIONER OF
                                      SOCIAL SECURITY'S DECISION
14  COMMISSIONER OF SOCIAL
    SECURITY,[1]                      (Doc. 16)
15
                Defendant.
16

17

18          Carlos Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner

19  of Social Security ("Commissioner" or "Defendant") denying his application for disability

20  insurance and supplemental security income benefits under the Social Security Act.  (Doc. 1).

21  The matter currently is before the Court on the certified administrative record (Doc. 13) and the

22  parties' briefs, which were submitted without oral argument.  (Docs. 16, 19, 25).[2]  Plaintiff asserts

23

24          [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social
    Security Administration.  *See* https://www.ssa.gov/history/commissioners.html. He therefore is
25  substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the
    "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
26  Commissioner shall, in [their] official capacity, be the proper defendant.").

27
            [2]  Both parties have consented to the jurisdiction of a magistrate judge for all proceedings
28  in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 11).

the Administrative Law Judge ("ALJ") erred in his analysis of two issues and requests the decision of the Commissioner be vacated and the case be remanded for the payment of benefits based on the credit-as-true rule.  (Doc. 16 at 2, 7-16).

## I.       BACKGROUND

### A. Administrative Proceedings

On September 14, 2016, Plaintiff protectively filed an application for benefits pursuant to Title II and Part A of Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., alleging a period of disability beginning on February 24, 2016.  (Administrative Record ("AR") at 186-201).  Plaintiff was 33 years old on the alleged disability onset date.  *Id*. at 190.  The Commissioner denied Plaintiff's application initially and again on reconsideration.  *Id*. at 88-89, 118-24.  Plaintiff submitted a written request for a hearing by an Administrative Law Judge ("ALJ") on June 22, 2017.  *Id*. at 134-35.

On January 22, 2019, Plaintiff, represented by counsel, appeared for a hearing before ALJ Arthur Zeidman via video.  *Id*. at 24, 38-64.  Vocational Expert ("VE") Bonnie J. Drumwright, PhD,) also testified at the hearing.  *Id*. 24, 38, 57-62.

### B. Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### C. Hearing Testimony

Plaintiff testified he was involved in a family car accident on February 16, 2016, and began having problems with his back.  *Id*. at 47.  Plaintiff noted he saw his doctor and participated in pain management for his back.  *Id*.  Plaintiff initially saw a chiropractor for his back but was sent to another doctor.  *Id*. at 47-48.  Plaintiff testified he was prescribed and took medicine for his back.  *Id*. at 48.  Plaintiff stated he took "Norco" three times a day."  *Id*. at 50-51.  Plaintiff also claimed he took muscle relaxers, Flexeril, and Gabapentin for nerve pain.  *Id*. at 51.  Plaintiff asserted he has bad anxiety and "emotional" issues because of his medication.  *Id*. at 56.

Plaintiff asserted his back constantly bothered him and that his pain was concentrated in his lower back and ran down his leg.  *Id*. at 48, 51.  Plaintiff described the pain as stabbing,

1    shooting down his right leg, with a lot of spasms. *Id*. at 52. Plaintiff claimed he has spasms

2    every day and has to lie down right away. *Id*. Plaintiff asserted he discussed but did not undergo

3    back surgery. *Id*. at 52-53. Plaintiff testified he constantly must use a heating pad, for half the

4    day, to relieve his pain. *Id*. at 53. Plaintiff reported he has difficulty concentrating and sweats a

5    lot, has difficulty getting, and that he cannot bend and that his back often locks up because of the

6    pain. *Id*. at 54, 56.

7         Plaintiff testified he is not able to drive and that his parents take him places. *Id*. at 48.

8    Plaintiff also reported he began experiencing mental health problems after the accident occurred.

9    *Id*. Plaintiff testified he saw Dr. Angela Grasser for his physical concerns but that he had not seen

10   a psychiatrist or a psychologist. *Id*. at 49. Plaintiff believed seeing a psychiatrist or psychologist

11   would be helpful and that his health insurance covered it. *Id*.

12        Plaintiff reported he took his daughter to school in the mornings and would come back

13   home and lie down. *Id*. Plaintiff testified he doesn't do chores and his mother cooks him food.

14   *Id*. at 49, 55-56. Plaintiff noted he tries to go shopping with his family, but his mother usually

15   gets his groceries or clothing for him. *Id*. at 50. Plaintiff testified he spends most of the day lying

16   down and he does not leave his house besides going to the doctor. *Id*. at 54, 56.

17        Plaintiff claimed, before his accident, he worked at Baker Commodities as a maintenance

18   mechanic for industrial equipment between 2004 and 2011. *Id*. at 41-42. Plaintiff's

19   responsibilities included welding and fabricating equipment. *Id*. at 42-43. Plaintiff estimated the

20   heaviest objects he would have to lift were up to 100 pounds. *Id*. at 45-46. Plaintiff reported he

21   was "laid off" from Baker Commodities. *Id*. at 46. Thereafter, Plaintiff did part-time work and

22   was looking for full-time work. *Id*. at 46-47.

23        The VE summarized Plaintiff's work for the last 15 years as a maintenance mechanic. *Id*.

24   at 59. The ALJ proffered a hypothetical to the VE of an individual with the same age, education,

25   and past job as Plaintiff who was limited to less than the full range of light work, including lifting

26   and carrying 20 pounds only occasionally, ten pounds frequently, sitting for six hours, standing

27   for six hours, walking for six hours, and pushing and pulling as much as he can lift and carry. *Id*.

28   at 59-60. Further, this proposed individual could climb ramps and stairs frequently, climb

3

ladders, ropes, or scaffolds occasionally, balance frequently, stoop occasionally, kneel frequently, crouch occasionally, crawl frequently, and operate a motor vehicle occasionally. *Id*. at 60. The VE assessed this person would not be able to perform any of Plaintiff's past work. *Id*. However, the VE determined that the person could still perform work in a variety of other fields, including as a cashier II (DOT #211.462-010), fast food worker (DOT #311.472-010), and marker (DOT #209.587-034). *Id*.

The ALJ proffered a second hypothetical of an individual similar to the first but, for a variety of reasons, would be off task 25% of the day. *Id*. at 61. The VE assessed this person would not be able to perform any of the jobs mentioned. *Id*. Plaintiff's Counsel proffered a hypothetical of an individual who could rarely lift less than five pounds, could sit only about an hour, and stand and walk for an hour. *Id*. The VE testified this person would be unable to work. *See Id*. at 62. ("No, there wouldn't be any jobs that would meet the definition of competitive gainful employment at two hours."). Thereafter, the ALJ decided a post-hearing orthopedic consultative examination should occur and concluded the hearing. *Id*. at 63.

On February 10, 2019, a post-hearing orthopedic consultative examination took place. *Id*. at 516-36. On April 18, 2019, the evidence was provided to Plaintiff. *Id*. at 20, 516-36. On May 8, 2019, Plaintiff submitted a response to the examination. *Id*. at 284-85. The ALJ deemed the response to be an objection to the post-hearing orthopedic consultative examination and was overruled as being both vague and failing to state any basis for the objection. *Id*. at 20.

**D. The ALJ's Decision**

On June 5, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 20-30. The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520(a). *Id*. at 21-29. The ALJ found Plaintiff had not engaged in substantial gainful activity since February 24, 2016, the alleged onset date (step one). *Id*. at 22. The ALJ held Plaintiff possessed the following severe impairment: degenerative disc disease of the lumbar spine (step two). *Id*. at 23. The ALJ recognized that the record indicated that Plaintiff suffered from depression since the latter part of 2016. *Id*. However, the ALJ determined Plaintiff's depression did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and was

1  therefore nonsevere.  *Id*.

2          Next, the ALJ determined Plaintiff did not have an impairment or combination of

3  impairments that meets or medically equals the severity of one of the listed impairments in 20

4  C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  *Id*. at 24.  The ALJ then

5  assessed Plaintiff's residual functional capacity ("RFC").  *Id*. at 24.  The ALJ found that Plaintiff

6  retained the RFC:

7          "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
        lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours, stand for 6
8          hours, and walk for 6 hours; push/pull as much as can lift/carry; frequently climb
        ramps and stairs and occasionally climb ladders, ropes, or scaffolds; frequently
9          balance, kneel, or crawl and occasionally stoop or crouch; and can operate a motor
        vehicle occasionally."
10

11  *Id*.

12          The ALJ acknowledged that while Plaintiff's impairments could reasonably be

13  expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity,

14  persistence and limiting effects of his symptoms were not entirely consistent with the

15  medical evidence and other evidence in the record.  *Id*. at 25.

16          Thereafter, the ALJ reviewed Plaintiff's treatment record from 2016 through 2019.

17  *Id*. at 25-27.  The ALJ found that Plaintiff was involved in a car accident on February 24,

18  2016, but did not receive medical attention after the accident.  *Id*. at 25.   The ALJ noted

19  Plaintiff's treatment records indicated no mention of any back-related symptoms or

20  impairment until July 2016.  *Id*. at 25-26.  The ALJ reviewed a July 26, 2016, MRI of

21  Plaintiff's spine.  *Id*. at 26.  The MRI revealed a "L4-L5 disc protrusion effacing the thecal

22  sac combined with facet hypertrophy resulting in encroachment of the transiting nerve

23  roots; L5-S1 disc protrusion that abuts the thecal sac; mild discogenic spondylosis at L4-

24  L5; and mild facet arthrosis at L4-S1."  *Id*.

25          The ALJ reviewed treatment notes from Dr. Angela Grasser on August 16, 2016.

26  *Id*.  Plaintiff was noted to have tenderness in his lower back and decreased range of motion

27  but otherwise had a normal examination and that his chiropractic treatment was helping.

28

5

1    *Id.*  Plaintiff was prescribed Norco, Flexeril, and ibuprofen.  *Id.*  The ALJ determined

2    Plaintiff underwent a consultation conducted by neurosurgeon Dr. Al. Najafi on September

3    13, 2016.  *Id.*  Dr. Najafi's examination of Plaintiff was normal except for lumbar

4    tenderness in the midlumbar spine, positive straight leg raise on the right, and diminished

5    perception of light touch in the lateral shin and anterior foot of the right lower extremity.

6    *Id.*  Dr. Najafi diagnosed Plaintiff with lumbar disc herniation with radiculopathy and

7    scheduled him for a transforaminal root block at L4-L5 and a facet injection at the same

8    level, which took place on September 19, 2016.  *Id.*

9           The ALJ noted "[s]ubsequent records indicated Plaintiff continued to complain of

10   low back, pain, tenderness and decreased range of motion of the lumbar spine."  *Id.*

11   Plaintiff was provided a positive slump test, Patrick test, with facet loading, occasional

12   positive straight leg raise tests, and occasional evidence of limping.  *Id.*  Plaintiff's

13   December 29, 2016, EMG/nerve conduction study was normal.  *Id.*  The ALJ noted

14   Plaintiff "did undergo a skin biopsy for epiderma nerve fiber density, which was abnormal

15   for low nerve fiber density consistent with small fiber neuropathy of the right thigh and

16   calf."  *Id.*

17          Next, the ALJ considered Plaintiff's treatment records from 2017.  *Id.*  The

18   treatment notes continued to reveal similar findings with minimal change in treatment.  *Id.*

19   The ALJ determined Plaintiff "reported he was able to clean his home, drive, cook, and

20   care for his personal hygiene."  *Id.*  The ALJ found by October and December 2017, Dr.

21   Grasser noted Plaintiff's condition was stable.  *Id.*  The ALJ found that Plaintiff's 2018

22   treatment notes were similar to 2016 and 2017 with evidence of limited range of motion of

23   the lumbar spine and occasional positive straight leg raise tests due to lumbar

24   radiculopathy.  *Id.*

25          The ALJ considered a post-hearing February 2019 internal medicine consultative

26   examination conducted by Dr. Roger Wagner.  *Id.* at 27.  Dr. Wagner observed and

27   examined Plaintiff but did not have the opportunity to review any records except for an

28   MRI Plaintiff brought to the examination.  *Id.*  Dr. Wagner "observed [Plaintiff] walking a

6

half block, briskly, from the parking lot to the building." *Id*. Dr. Wagner noted Plaintiff was able to sit 45 minutes at a time, cook, clean, drive, shop, perform his activities of daily living, and walk his child to school despite testifying at the January 2019 hearing that he was unable to perform a majority of these activities. *Id*. Dr. Wagner found Plaintiff's "examination was relatively normal except for some decreased range of motion of the lumbar spine, positive straight leg raise test in the supine position on the right side with evidence of some pulling in the low back without obvious radiculopathy." *Id*.

The ALJ considered a post-hearing April 2019 orthopedic consultative examination conducted by Dr. Kale H. Van Kirk. *Id*. Dr. Van Kirk noted Plaintiff claimed he was able to take care of his personal hygiene, eat, watch television, and read but was unable to cook and perform heavy yard work, or household chores. *Id*. Dr. Van Kirk found Plaintiff did have pain in the mid-lumbar spine area that radiated to the waist area and into the buttocks bilaterally along with decreased range of motion and decreased reflexes. *Id*. Dr. Van Kirk determined Plaintiff was able to sit comfortably at the examination table, get up and out of the chair, and walk around the exam room without difficulty, and exhibited no limp. *Id*. Dr. Van Kirk noted Plaintiff had a normal Romberg test, his tandem walking was satisfactory, he was able to get on his toes and heels had a normal heel/toe gait pattern and was able to squat down and take a few steps without difficulty. *Id*. Dr. Van Kirk diagnosed Plaintiff with chronic lumbosacral musculoligamentous strain/sprain. *Id*.

The ALJ gave "greatest weight" to the opinions of Dr. Van Kirk and nonexamining medical consultants, Drs. E. Wong and K. Mohan. *Id*. The ALJ found these opinions showed Plaintiff was capable of less than light exertion. *Id*. The ALJ asserted these opinions were supported by Plaintiff's "continued abnormal clinical findings of decreased range of motion and tenderness; however, the record also exhibited evidence of normal gait, ability to sit comfortably and move about without difficulty, and perform his daily activities." *Id*.

The ALJ gave "[s]ignificant weight to the opinions of consultative examiner Dr. Richard Engeln and medical consultants Drs. E. Aquino-Caro and R. Adamo. *Id*. The ALJ

found these opinions showed Plaintiff's mental impairments caused no more than mild limitations.  *Id*.  The ALJ determined these opinions were supported by the overall medical evidence of record indicating that Plaintiff's mental impairment would not prevent job adjustment.  *Id*.

The ALJ gave little weight to the opinion of a non-acceptable medical source, physical therapist Daniel Alfaro.  *Id*.  Mr. Alfaro opined Plaintiff was functionally limited in bending, lifting, walking, and sitting.  *Id*.  The ALJ acknowledged that the opinion was supported by findings of limitations in those areas.  *Id*.  However, the ALJ determined Mr. Alfaro did not provide the level of limitation.  *Id*.

The ALJ gave little weight to the opinion of Dr. Grasser.  *Id*. at 28.  Dr. Grasser opined Plaintiff is limited to a restrictive range of sedentary exertion.  *Id*.  The ALJ held Dr. Grasser's opinion was not supported by the clinical findings along with Plaintiff's reports in January and February 2017 and February 2019 that he can cook, clean, drive, shop, and walk his child to school.  *Id*.

The ALJ gave little weight to the opinion of Dr. Wagner.  *Id*.  Dr. Wagner opined Plaintiff is capable of less than medium exertion.  *Id*.  The ALJ determined Dr. Wagner's opinion was not supported by the overall medical evidence of record, including an abnormal 2016 MRI, continued abnormal clinical findings, and Plaintiff's continued back pain management indicating Plaintiff's condition is more limiting.  *Id*.  Further, the ALJ noted Dr. Wagner did not have access to any evidence of record other than the MRI.  *Id*.

The ALJ concluded Plaintiff's subjective complaints and alleged limitations were not entirely consistent with the medical evidence of record.  *Id*.  Instead, the ALJ found Plaintiff retained the capacity to perform less than the full range of light work described in the RFC provided.  *Id*.

The ALJ determined that Plaintiff was unable to perform any past relevant work (step four) but could perform a significant number of other jobs in the national economy, including cashier II, fast food worker, and marker, (step five).  *Id*. at 28-29.  The ALJ concluded Plaintiff has not been under a disability as defined in the Act.  *Id*. at 29.

### E. The Appeals Council's Decision

On May 1, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 6-11.  Plaintiff filed this action on July 2, 2020, seeking judicial review of the denial of his application for benefits.  (Doc. 1).  The Commissioner lodged the administrative record on July 30, 2021.  (Doc. 13).  Plaintiff filed an opening brief on September 17, 2021.  (Doc. 16).  On November 30, 2021, Defendant filed a responsive brief and Plaintiff filed a reply on February 14, 2022.  (Docs. 19, 25).

## II.    LEGAL STANDARD

### A. The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).  Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

1   *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

2       Before making the step four determinations, the ALJ first must determine the claimant's

3   RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their

4   limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§

5   404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments,

6   including those that are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*, *Wells v.*

7   *Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

8   assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

9   medically determinable impairments, whether severe or not severe.").  The RFC is not a medical

10  opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to

11  the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

12  Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

13  residual functional capacity.").

14      At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

15  other work in the national economy given the claimant's RFC, age, education, and work

16  experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

17  either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsburry v.*

18  *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

19  Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

20  credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950

21  F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

22      **B. Standard of Review**

23      Congress has provided that an individual may obtain judicial review of any final decision

24  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

25  determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

26  party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

27  court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

28  legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

1   (9th Cir. 1999).

2       "Substantial evidence is relevant evidence which, considering the record as a whole, a

3   reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278

4   F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

5   1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

6   *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

7   scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

8   *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

9       "[A] reviewing court must consider the entire record as a whole and may not affirm

10  simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153,

11  1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

12  to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*,

13  950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

14  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

15  454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

16  nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

17  (quotation and citation omitted). The burden of showing that an error is not harmless "normally

18  falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396,

19  409 (2009).

20                    **III.    LEGAL ISSUES**

21      Plaintiff asserts the ALJ committed harmful error by failing to defer and afford "greatest

22  weight" to the medical source statements of treating physician Dr. Grasser "absent the requisite

23  'specific and legitimate' reasons."  (Doc. 16 at 2, 7-12).  Plaintiff also argues the ALJ committed

24  harmful error by failing to provide "clear and convincing" reasons for rejecting Plaintiff's

25  symptomology evidence.  *Id*. at 2, 12-15.

26  / / /

27  / / /

28

                                11

1      **IV.    DISCUSSION**

2      **A.    Whether the ALJ Provided Specific and Legitimate Reasons to Assign**

3  **Reduced Weight to the Opinion of Dr. Grasser.**

4          For Social Security disability cases filed before March 27, 2017, the weight to be given to

5  medical opinions depends in part on whether the opinions are proffered by treating, examining, or

6  nonexamining health professionals.[4] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Fair v.*

7  *Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to

8  the opinion of a treating source than to the opinion of doctors who do not treat the claimant…" as

9  a treating doctor is employed to cure and has a greater opportunity to know and observe the

10  patient as an individual.  *Lester*, 81 F.3d at 830; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

11  1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990); *Cf. Pitzer v. Sullivan*, 908 F.2d

12  502, 506, n.4 (9th Cir. 1990) (the least weight is given to the opinion of a non-examining

13  professional).

14          The uncontradicted opinion of a treating or examining physician may be rejected only for

15  clear and convincing reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at

16  831.  The opinion of a treating or examining physician that is controverted by another doctor may

17  be rejected only for specific and legitimate reasons supported by substantial evidence in the

18  record.  *Id.*  Specific and legitimate reasons require the ALJ to set out a detailed and thorough

19  summary of the facts and conflicting clinical evidence, state his/her interpretation of the evidence,

20  and make a finding.  *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *see Reddick v.*

21  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions.

22  He must set forth his own interpretations and explain why they, rather than the doctors', are

23  correct.").  Absent specific and legitimate reasons, the ALJ must defer to the opinion of a treating

24  or examining physician.  *See Lester*, 81 F.3d at 830-31.

25  _____

26          [4] Effective March 27, 2017, Revisions to Rules Regarding the Evaluation of Medical
Evidence went into effect.  Plaintiff's application was filed prior to March 27, 2017 (AR at 186-

27  201).  "For claims filed before March 27, 2017, but not decided until after that date…the rules
listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) apply."  *Edinger v. Saul*, 432 F. Supp. 3d 516, 530

28  (E.D. Pa. 2020).

Plaintiff was seen by Dr. Grasser on August 19, 2016.  AR at 290-93.  Dr. Grasser noted Plaintiff was in a motor vehicle accident and was going to a chiropractor for treatment.  *Id*. at 290.  Dr. Grasser documented Plaintiff's chiropractic treatment was "helping" but that his pain was not improving and that an MRI identified a bulging disc with nerve involvement.  *Id*.  Dr. Grasser performed a physical examination that showed Plaintiff had normal range of motion, normal strength, and a tender lower back with a decreased range of motion.  *Id*. at 291.  Dr. Grasser diagnosed Plaintiff with lower back pain, prescribed him Norco, Flexeril, and ibuprofen, and referred him for a neurological surgery consultation and to a pain specialist.  *Id*. at 292.

Plaintiff saw Dr. Grasser again on November 23, 2016.  *Id*. at 336-39.  Dr. Grasser again noted Plaintiff's pain was not improving and medication was not helping much.  *Id*. at 336.  Dr. Grasser noted Plaintiff's chiropractic treatment was still helping, but he still had a tender lower back with a decreased range of motion.  *Id*. at 337.

On December 21, 2016, Dr. Grasser completed a physical residual functional capacity medical source statement for Plaintiff.  *Id*. at 238-31.  Dr. Grasser diagnosed Plaintiff with a "herniated disc L4. L5 effaces thecal sac [and] nerve roots."  *Id*. at 328.  Dr. Grasser's prognosis of Plaintiff's condition was "fair."  *Id*.  Dr. Grasser identified Plaintiff had back pain and leg numbness.  *Id*.  Dr. Grasser described the pain as "9-10/10 lower back [radiating] to leg[, sharp, [with Plaintiff] unable to walk/lift."  *Id*.  Dr. Grasser noted Plaintiff had a tender lower back and issues with his sciatic nerve.  *Id*.

Dr. Grasser determined Plaintiff's condition had lasted since February 2016 and he could no longer work.  *Id*.  Dr. Grasser opined Plaintiff "rarely" would be able to lift and carry less than five pounds in a competitive work environment.  *Id*. at 328-29.  Dr. Grasser found Plaintiff would have problems walking, climbing stairs, stooping, crouching, and bending.  *Id*. at 329.  Dr. Grasser estimated Plaintiff must lie down/recline for 30 minutes before he could sit up, stand up, or walk around.  *Id*.  Dr. Grasser determined Plaintiff would need to lie down/recline for an hour during an 8-hour workday.  *Id*.  Dr. Grasser noted Plaintiff could only sit, stand, and/or walk for about an hour before he needed to take an unscheduled break.  *Id*. at 329-30.  Next, Dr. Grasser found Plaintiff was limited in his ability to reach overhead, push, and pull, and he could not use

stairs, ladders, scaffolds, ropes, and ramps.  *Id*. at 330.  Dr. Grasser identified Plaintiff's pain and mental condition could frequently affect his ability to work.  *Id*. at 330-31.

On December 27, 2016, Plaintiff again saw Dr. Grasser.  *Id*. at 332-35.  Dr. Grasser's notes reflect similar findings to Plaintiff's August and November visits.  *Id*.  On December 11, 2018, Dr. Grasser completed a second physical residual functional capacity medical source statement for Plaintiff.  *Id*. at 512-15.  Dr. Grasser's second statement largely mirrored her first.  *Id*.

As discussed above, the ALJ gave little weight to the opinion of Dr. Grasser because it was not supported by the clinical findings.  AR at 28.  Plaintiff argues the ALJ erred by failing to detail what "clinical findings" of record did not support Dr. Grasser's RFC.  (Doc. 16 at 9-10). Plaintiff argues the record is replete with extensive objective examinations that support Dr. Grasser's opinion.  *Id*. at 10.  Plaintiff acknowledges the ALJ "briefly 'summarizes' the medical evidence of record on one page of the unfavorable decision (AR at 26)" but asserts "there is no discussion by the ALJ how this considerable objective evidence of limitation does not support the long-term treating physician's less than sedentary RFC[.]"  *Id*.

Defendant contends the ALJ properly assigned "little weight" to Dr. Grasser's opinion because her opinion was inconsistent with her treatment notes and objective findings, the medical evidence as a whole, and other evidence in the record.  (Doc. 19 at 6).  Thereafter, Defendant posits treatment records that undermine Dr. Grasser's opinion.  *Id*. at 6-7.  In reply, Plaintiff avers Defendant "cannot remedy the ALJ's harmful error of failing to provide the requisite 'specific and legitimate' reasons to reject the well-supported treating physician opinion, with post hoc citations to the record."  (Doc. 25 at 3).

An ALJ may reject the opinions of a physician when they are inconsistent with the overall record.  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  However, to do so, "[t]he ALJ must do more than offer his conclusions."  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the

14

medical evidence.  *Tackett*, 180 F.3d at 1102; *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

Here, the ALJ does not identify what "clinical findings" undermined Dr. Grasser's opinions.  While the ALJ summarized Plaintiff's clinical findings (AR at 25-26), he did not point to any specific record that served to invalidate Dr. Grasser's opinions.  *See Jones v. Saul*, No. 2:18-cv-1094-EFB, 2019 WL 4747702, at *4 (E.D. Cal. Sept. 30, 2019) (finding the ALJ erred when he "merely offered his conclusions" that the physician's opinion was inconsistent with other evidence and failed to either identify specific objective findings from his summary of the medical record or provide "an explanation of how such evidence undermines [the physician's] opinion"); *cf. Martinez v. Kijakazi*, No. 1:21-cv-0160-JLT-HBK, 2023 WL 5348335, at *3 (E.D. Cal. Aug. 20, 2023) ("Although the ALJ thoroughly summarized the medical record…the ALJ did not link this summary of the medical record to the rejected limitations").

Although Defendant offers a summary of the medical record and identifies certain conflicts in the record (Doc. 19 at 6-7), the burden was on the ALJ to specifically identify the evidence that conflicted with Dr. Grasser's opinion.  *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("it is the ALJ's role to…resolve the conflict"); *Gray v. Comm'r of SSA*, 365 Fed. App'x 60, 62 (9th Cir. 2010) ("When medical records are at odds with each other or in any way conflict, it is the ALJ's role to assess and resolve conflicting medical evidence").  The Court declines to speculate as to what "clinical findings" the ALJ held undermined Dr. Grasser's proposed limitations.  The Court "is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion." *Lara v. O'Malley*, No. 2:22-cv-1553 DB, 2024 WL 813459, at *4 (E.D. Cal. Feb. 27, 2024) (quoting *Romo v. Colvin*, 83 F.Supp.3d 1116, 1121 n.4 (D. Colo. 2015)).

The ALJ also gave little weight to Dr. Grasser's opinion because of Plaintiff's reports in January and February of 2017 and February 2019 that he can cook, clean, drive, shop, and walk his child to school.  (AR at 28) (citing Exhibits 18F at 2; 12F at 104; 5F at 1).  Plaintiff contends the ALJ is "significantly mischaracterizing" his reported activities of daily living ("ADLs"). (Doc. 16 at 11).  Specifically, Plaintiff argues the evidence proffered by the ALJ does not

adequately address his ADLs and the ALJ fails to address his hearing testimony concerning said ADLs. *Id.* at 11-12.  In contrast, Defendant asserts Plaintiff's reports in January and February 2017, and February 2019 show that he is able to cook, clean, drive, shop, and walk his child to school and do not support the limitations placed on him by Dr. Grasser.  (Doc. 19 at 7). Defendant also argues "from September 2016 through October 2018, Plaintiff consistently reported he was able to clean his home, drive, cook, bathe, and dress." *Id.* at 7-8.

An ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the subjective complaints and limitations identified by the doctor that conflicted with the claimant's daily activities).

Here, the ALJ first cities to Exhibit 18F.  (AR at 28).  This exhibit does not exist within the record. *See generally* AR.  Further, Exhibit 5F page 1, Dr. Grasser's December 2016 physical residual functional capacity medical source statement, does not discuss Plaintiff's ADLs. *Id.* at 331.  Finally, Exhibit 12F page 104, is a February 2017 report from Nurse Practitioner ("NP") Hector Sanchez at LAGS Spine and Sportcare notes Plaintiff can clean his home, drive, cook, and was able to bathe/dress himself. *Id.* at 499.

The January 2017 report referenced, but not accurately cited, by the ALJ is an evaluation by NP Sanchez noting Plaintiff can clean his home, drive, cook, and was able to bathe/dress himself. *Id.* at 356.  The February 2018 report referenced, but not accurately cited, by the ALJ is an evaluation by Dr. Wagner. *Id.* at 516.  Dr. Wagner found Plaintiff cooks, cleans, shops, walks his children to school for exercise, and "perform[s] his own activities of daily living without assistance." *Id.*

The ALJ's references and citations to Plaintiff's ADLs fails to meet the specific and legitimate reasons standard.  The Ninth Circuit requires the ALJ to describe the daily activities, note whether the claimant performs them alone or with assistance, and evaluate whether the nature of each activity "comprise[s] a 'substantial' portion of [the claimant's] day, or [is]

1    'transferable' to a work environment." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2013).

2    Without such description and analysis, it is impossible to ascertain whether a claimant's ability to

3    "carry out ADLs" contradicts his testimony. *Id.*; *see Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th

4    Cir. 2017) (finding error where the ALJ failed to develop a record regarding the extent to which

5    and the frequency with which claimant engaged in specified ADLs, identify any other tasks that

6    might undermine her claimed limitations, or inquire into whether claimant completed activities

7    alone or with the help of others).

8            Here, the ALJ did not discuss, in any detail, Plaintiff's ADLs when he discounted Dr.

9    Grasser's opinion. *See* AR at 28. The ALJ failed to explain how Plaintiff's ability to cook, clean,

10   drive, shop, and walk his child to school, invalidated the limitations proposed by Dr. Grasser.

11   Under these circumstances, the Court cannot find that the ALJ provided specific and legitimate

12   reasons supported by substantial evidence to discount Dr. Grasser's opinion.

13           **B.      Whether the ALJ Erred by Failing to Provide "Clear and Convincing**

14   **Reasons for Rejecting Plaintiff's Symptomology Evidence.**

15           The ALJ is responsible for determining credibility,[5] resolving conflicts in medical

16   testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. A claimant's statements of pain

17   or other symptoms are not conclusive evidence of a physical or mental impairment or disability.

18   42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements

19   of symptoms alone are not enough to establish the existence of a physical or mental impairment

20   or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required

21   to believe every allegation of disabling pain or other non-exertional impairment.") (internal

22   quotation marks and citation omitted). Determining whether a claimant's testimony regarding

23   subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.

24   *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the

25

26           [5] Social Security Ruling (SSR) 16-3p applies to disability applications heard by the
     agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to
27   emphasize that subjective symptom evaluation is not "an examination of an individual's character
     but an endeavor to "determine how symptoms limit [the] ability to perform work-related
28   activities." SSR 16-3p, 2017 WL 5180304, at *3.

claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1281).  *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *F&R adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

1  appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

2  follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d

3  at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the

4  factors identified in SSR 16-3P. *Id.*[6] (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

5  1991)). *Accord Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These

6  factors include:

7    (1) Daily activities; (2) The location, duration, frequency, and intensity of
     pain or other symptoms; (3) Factors that precipitate and aggravate the
8    symptoms; (4) The type, dosage, effectiveness, and side effects of any
     medication an individual takes or has taken to alleviate pain or other
9    symptoms; (5) Treatment, other than medication, an individual receives
     or has received for relief of pain or other symptoms; (6) Any measures
10   other than treatment an individual uses or has used to relieve pain or other
     symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes
11   every hour, or sleeping on a board); and (7) Any other factors concerning
     an individual's functional limitations and restrictions due to pain or other
12   symptoms.

13  SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

14  supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*,

15  533 F.3d at 1039 (citations and internal quotation marks omitted).

16    The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

17  demanding requirement in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v.

18  Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's

19  testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the

20  adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily

21  discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th

22  Cir. 2015) (citation and internal quotation marks omitted).

23    "The fact that a claimant's testimony is not fully corroborated by the objective medical

24  findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan*, 260 F.3d

25  at 1049. *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity

26

27    [6] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at
    2017 WL 5180304). *See Amy E.S. v. Commissioner*, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10,
28  2022).

1  and persistence of your pain or other symptoms or about the effect your symptoms have on your

2  ability solely because the objective medical evidence does not substantiate your statements.").

3  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical

4  record, the ALJ must provide additional reasons for discounting the testimony.  *Burch*, 400 F.3d

5  at 680.  "The ALJ must specify what testimony is not credible and identify the evidence that

6  undermines the claimant's complaints – '[g]eneral findings are insufficient.'"  *Id.* (quoting

7  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

8      However, the medical evidence "is still a relevant factor in determining the severity of the

9  claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

10 2001).  The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical

11 evidence from testimony that is "contradicted" by the medical records and concluded that

12 contradictions with the medical records, by themselves, are enough to meet the clear and

13 convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (quoting

14 *Carmickle*, 533 F.3d at 1161).  The Court of Appeals has also acknowledged that the ALJ is not

15 "required to believe every allegation of disabling pain, or else disability benefits would be

16 available for the asking, a result plainly contrary to" the Social Security Act.  *Molina*, 674 F.3d at

17 1104.

18     Here, the ALJ acknowledged Plaintiff's subjective complaints but found his statements

19 about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the

20 evidence of record.  AR at 25, 28.  The ALJ noted that in February 2017, Plaintiff reported he was

21 able to clean his home, drive, cook, and care for his personal hygiene.  *Id*. at 26, 499.  This

22 treatment record contradicts Plaintiff's hearing testimony that he was unable to drive, do chores,

23 cook, and/or shop.  *Id*. at 48-50.  Likewise, the ALJ found Plaintiff's testimony was contradicted

24 by Plaintiff's statements in the February 2019 internal medicine consultative examination

25 conducted by Dr. Wagner.  *Id*. at 27.  Dr. Wagner noted Plaintiff "does cook and clean…does

26 drive, but his car is currently broken…does shop and perform his own activities of daily living

27 without assistance" despite testifying, a month earlier, that he was unable to perform a majority of

28 these activities.  *Id*. at 27, 516.

Moreover, the ALJ did not merely cite inconsistencies in the record, but effectively signaled that his discounting of Plaintiff's testimony was because of these inconsistencies.  For example, the ALJ highlighted the significance of Dr. Wagner's documentation that Plaintiff could sit for 45 minutes at a time, cook, clean, drive, shop, perform his activities of daily living, and walk his child to school, by observing "despite [Plaintiff's] testifying" to the contrary.  (AR 27 citing Ex. 15F).  The ALJ's use of signaling language like this enables this Court to conclude the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit the testimony.  *Moisa*, 367 F.3d at 885.

An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements.  *Burch*, 400 F.3d at 681.  Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable works skills.  *Orn*, 495 F.3d at 639; *see Molina*, 674 F.3d at 1112 (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").  The record demonstrates Plaintiff's reported daily activities directly contradict his hearing testimony.  The ALJ recognized this discrepancy in Plaintiff's testimony, and thus provided clear and convincing reasons to discount Plaintiff's "symptomology evidence."  *C.f. Sharp v. Colvin*, No. 1:13-cv-02028-BAM, 2015 WL 1274727, at *5 (E.D. Cal. Mar. 19, 2015) (finding that the ALJ properly discounted plaintiff's testimony as inconsistent with his daily activities).

## V.      REMEDY

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Plaintiff requests the Court remand this case for payment of benefits based on the credit-as-true rule.  (Doc. 16 at 15-16).  Generally, an award of benefits is directed when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).  Even if all the conditions for an award of benefits are met, the Court nevertheless retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Garrison*, 759 F.3d at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose.  The record includes multiple medical opinions, medical evidence, Plaintiff's testimony, and the testimony of the VE.  As discussed above, the ALJ has failed to provide legally sufficient reasons for discounting the opinion of treating physician Dr. Grasser.  And, if Dr. Grasser's opinion were credited-as-true, the ALJ would be required to find Plaintiff disabled on remand.

Dr. Grasser, Plaintiff's treating physician, opined Plaintiff could no longer work.  AR at 328.  Dr. Grasser determined Plaintiff could only sit for about 1 hour and stand and walk for about 1 hour in an 8-hour workday.  *Id*.  When the opinion of Dr. Grasser is credited as true, the testimony of the VE makes clear that Plaintiff could not maintain any employment in the general economy given the limitations outlined by Dr. Grasser.  *Id*. at 62.

Defendant asserts "additional development of the record would be necessary in order to find Plaintiff disabled based on the issues raised in Plaintiff's appeal."  (Doc. 19 at 13).  However, the issue raised by Plaintiff, Dr. Grasser's opinion, was already before the ALJ.  *See Varney v. Sec. of Health & Hum. Servs.*,  859 F.2d 1396, 1399 (9th Cir. 1988) ("Delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage—financial, medical, and emotional.").  Defendant claims the Social Security Act "does not allow a court to find disability under the

complex statutory scheme merely because an ALJ erred in explaining why she rejected certain pieces of evidence." *Id.* at 14.  Defendant's argument is unpersuasive.  Allowing the ALJ a "redo" would only grant the ALJ an unwarranted do over and punish the plaintiff.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa*, 367 F.3d at 887 ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, this action will be remanded for payment of benefits.

## VI.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED:

1.  Plaintiff's motion for summary judgment (Doc. 16) is GRANTED;

2.  That the decision of the Commissioner is reversed, and this matter is remanded for payment of benefits; and

3.  The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Carlos Garcia and against Defendant Martin O'Malley, Commissioner of the Social Security Administration.

IT IS SO ORDERED.

Dated:   **April 29, 2024**

_____
UNITED STATES MAGISTRATE JUDGE